IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION

| | | |
|---|---|---|
| PATTY JEAN TALBOTT | ) | KNOX COUNTY |
| and SAM TALBOTT | ) | 03A01-9609-CV-00304 |
| | ) | |
| Plaintiffs-Appellants | ) | |
| | ) | |
| | ) | HON. WHEELER ROSENBALM, |
| v. | ) | JUDGE |
| | ) | |
| | ) | |
| JUDY F. SLAVEN | ) | |
| | ) | |
| Defendant-Appellee | ) | AFFIRMED AND REMANDED |

JOHN M. FOLEY OF KNOXVILLE FOR APPELLANTS

PAUL F. DUNN OF KNOXVILLE FOR APPELLEE

O P I N I O N

Goddard, P.J.

Patty Jean Talbott and her husband, Sam Talbott, appeal a judgment entered in the Circuit Court for Knox County which, in accordance with a jury verdict, awarded her $2264.59 for personal injuries received in an automobile accident. The jury obviously found that Mr. Talbott suffered no damages and fixed his recovery at zero.

The Talbotts appeal, insisting that the judgments are so inadequate that the Trial Court erred in not granting a new trial or an additur. They also insist the Trial Court erred in not awarding discretionary costs which totaled $1595.40.

The standard of review in determining whether an appellate court should require a new trial because of the inadequacy of a jury verdict is whether the amount awarded falls below the range of reasonableness. Smith v. Shelton, 569 S.W.2d 421 (Tenn. 1978). Although not specifically citing Smith, this Court, in Wilkerson v. Altizer, 845 S.W.2d 744, 749 (Tenn. App. 1992), followed the same rule and, in doing so, said the following:

> This Court does not have the authority to grant an additur. Tenn. Code Ann. § 20-10-101. We review the action of the trial court in suggesting an additur pursuant to Tennessee Rule of Appellate Procedure 13(d). Tenn. Code Ann. 20-10-101(b)(2).
>
> However, the statute does not provide any guidance when the trial court refuses to grant an additur. See Foster v. Amcon International, Inc., 621 S.W.2d 142, 146 (Tenn. 1981).
>
> Here, the jury's verdict was not within the "range of reasonableness." Therefore, the trial court should have suggested an additur or granted a new trial. Foster v. Amcon International, Inc., 621 S.W.2d 142 (Tenn. 1981). We are of the opinion that the trial court abused its discretion in failing to suggest an additur or, in the alternative, failing to grant a new trial.

We recognize that there is evidence in the record from which the jury could make a significantly larger award as to Mrs. Talbott and also an award as to Mr. Talbott.

2

The Talbott's proof showed that the medical expenses incurred by Mrs. Talbott incident to her injuries were $4719.59, and that she suffered injuries to the left side of her face, her neck, her left arm and her chest, that she was taken by ambulance to St. Mary's Hospital Emergency Room where she was examined and x-rayed. She was also treated with a neck collar and given a prescription medicine before being released.

Immediately after the accident, she was treated briefly by her physician father and thereafter by a chiropractor for a short period of time. Later, she came under the care of Dr. George Fillmore who prescribed physical therapy. When the physical therapy did not significantly improve her condition, Dr. Fillmore referred her to Dr. A. B. Kliefoth, III, a neurosurgeon. MRI scans were done under Dr. Kliefoth's supervision, which revealed a small ruptured disc in her neck. This caused her no problem and surgery was not indicated. Dr. Kliefoth testified that in his opinion the automobile accident aggravated a pre-existing condition on her left side, and was of the further opinion that she more likely than not would need future medical treatment and medication for pain.

If the foregoing were the only evidence touching upon Mrs. Talbott's injuries we would have no hesitancy in finding the award was not within the range of reasonableness. However, there is other proof in the record which shows that Mrs. Talbott had been involved in a previous automobile accident in 1977, and some

3

nine months prior to the accident for which she seeks recovery she visited Dr. Robert Finelli, complaining of the same injuries and problems she contends were a result of the accident.

There was also introduced a medical history questionnaire which Mrs. Talbott completed approximately three months prior to the accident where she also complained of the same type pain and disabilities. In this connection, Mrs. Talbott testified as follows:

Q    Did you tell me in Mr. Foley's office in his presence that after Dr. Finelli did those diagnostic studies then you got totally well as far as you know anyhow?

A    After the myelogram was done I did not have anymore problems except one that I saw a dentist about.

Q    Did the answer -- did you give me the answer at that time that I did not have anymore neck problems after that or arm or shoulder problem after I had that done?

A    After I had the myelogram, that's true. I thought I was completely well.

Q    When I asked you about that, did you tell me about having some more neck pain before this accident?

A    I don't remember; I just don't remember.

        . . . .

Q    You heard your father I believe -- before I get into that -- testify today that so far as he recalled before this automobile accident of April the 15th of 1994, that you had not had any dizziness except perhaps when you were expecting your children?

A    I heard him testify to that?

Q    Yes.

A    Yes, I did hear him say that.

4

Q     And is dizziness one of the things that you now complain of?

A     Yes.

Q     And are you suggesting to the jury that before this automobile accident occurred that you had never had any problem with dizziness?

A     No, I'm not suggesting that at all.

Q     You have had dizziness before this accident. Is this what you're telling us?

A     Yes, I'm sure I've had some dizziness. I'm saying to the extent that I have it now I did not have, no.

          . . . .

Q     Is this a document that's in your handwriting?

A     Yes, it is.

Q     Thank you. What is the date of that document?

A     1/3/94.

Q     And it would be approximately three months before this automobile accident happened?

A     Right.

          . . . .

Q     The referral was made by your father Dr. A. Pat Kelly, referring to Exhibit number 4?

A     Okay.

Q     Is that correct?

A     Yes.

Q     Looking at line three?

A     Yes.

Q     Was an inquiry made as to whether at that time you were having headaches?

A     Yes.

Q     And did you say "yes"?

5

A    Yes.

Q    And neck pain?

A    Yes.

Q    And were you having neck pain at that time?

A    This was a question here for in the past problems.

Q    You say this was a question here in the past. What's the question?

A    "Do you have headaches?"

Q    And what was your answer?

A    "Yes."

Q    And then it was, do you have neck pain, wasn't it?

A    Right.

Q    And what was your answer to that?

A    Yes.

Q    And were you asked whether the pain was constant or not?

A    I don't know.  Could you point that out?

Q    I'm sorry.  Is the pain constant?

A    Yes.

Q    And you put a check mark?

A    Yes.

Q    Aching, you put a check mark?

A    Yes.

Q    Shooting, and you didn't put a check mark?

A    No.

Q    And burning, you put a check mark?

A    Yes.

6

Thus, there is material evidence in the record from which the jury could, and obviously did, find that the complaints Mrs. Talbott had subsequent to the accident were the same as those she identified on a form when she was having dental work done some three months previous to the accident. This fact would justify the jury's discounting Mrs. Talbott's testimony that at the time of the accident with Ms. Slaven she had completely recovered from her previous infirmity.

We accordingly conclude that there is material evidence in the record from which the jury could find that Mrs. Talbott was not injured in the accident as severely as she contended, that not all the medical expenses incurred were necessary, and that her husband's damages as a result of her injuries were de minimis.

As to the issue relative to refusal to award discretionary costs pursuant to Rule 54.04 of the Tennessee Rules of Civil Procedure, we first note, as the title of the Rule suggests, awarding of such costs is discretionary with the trial judge and his determination will not be overturned absent a showing of abuse. Our review of this record persuades us no abuse has been shown.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of the

7

judgment and costs below. Costs of appeal are adjudged against the Talbotts and their surety.

_____

Houston M Goddard, P.J.

CONCUR:

_____

Don T. McMurray, J.

_____

Charles D. Susano, Jr., J.

8